The Cadillac Automobile Company, Appellant, v. Elmer E. Boynton et al., Appellees.

Gen. No. 4,933.

1. INJUNCTIONS—*when bill to restrain collection of judgment insufficient.* A bill to restrain the collection of a judgment at law for alleged lack of service, etc., should do more than allege the existence of a good defense to the plaintiff's action; it should also set up with particularity the facts with respect to the plaintiff's claim and the facts which pertain to the defendant's defense in order that the court may, from such facts, determine the legal sufficiency of such defense.

2. INJUNCTIONS—*what not hearing upon merits.* Held, from the record in this case, that the hearing upon which the decree appealed from was predicated was not a hearing upon the merits of the action but was merely a hearing upon the motion to dissolve the injunction which had been granted upon the bill.

3. SERVICE OF PROCESS—*who agent for purposes of service upon corporation.* Held, from the contract and other evidence in this case, that the party served as agent of the corporation defendant named in the judgment, relief from which was sought in equity, was such agent as is contemplated by the statute.

Bill in equity. Appeal from the Circuit Court of DeKalb county; the Hon. CHARLES A. BISHOP, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed August 10, 1908.

Statement by the Court. Appellant filed a bill in equity against Elmer E. Boynton and James Pease, sheriff of Cook county, Illinois, alleging that on July 22, 1905, Boynton began a suit at law against appellant in the Circuit Court of DeKalb county and that a sum-

mons was issued on that day to the sheriff of DeKalb county, and that on September 21, 1905, it was served on E. H. Cohoon, a resident of Genoa, and on September 25, the summons was filed by the sheriff in the office of the clerk of the Circuit Court of De Kalb county. The bill set out the return in full, which in proper form showed service on appellant by reading the same to E. H. Cohoon, agent of appellant, and delivering to him a true copy thereof, and that the president of appellant was not found in the county. The bill further averred that in said action a judgment was rendered for Boynton and against appellant on January 25, 1906, for $1,125 and that an execution thereon was in the hands of the sheriff of Cook county, who had demanded payment of said execution and threatened to levy upon the property of appellant to satisfy the same. The bill further averred that at the time of said service Cohoon was not agent of appellant, nor any officer of appellant, and that appellant had no office at that time in De Kalb county; that appellant was not indebted to Boynton when said suit was begun, and is not now, and that if the appellant had been summoned or properly notified of said suit it would have had a meritorious defense, and now has a meritorious defense, but now has no adequate remedy at law. The bill prayed for an injunction restraining the collection of said judgment. The bill was sworn to by C. H. Foster, who on oath stated that he was the president and treasurer of appellant. The injunction was granted without notice and was served. Boynton answered the bill, asserting that at the time of the service of said summons Cohoon was the agent of appellant, within the meaning of the word "agent" in the statute of Illinois relating to service of summons in suits against corporations. The answer set up certain facts hereinafter mentioned with reference to the delivery of the copy of said summons by Cohoon to the secretary and president of appellant, and that they had due notice of the

commencement of the suit several months before the judgment was rendered and negligently and carelessly omitted to make defense. The answer denied that appellant had a defense, and alleged that the judgment was for a *bona fide* debt owing by appellant to Boynton. Boynton then moved to dissolve the injunction, and a hearing was had. The record is in confusion as to whether the hearing was upon the motion to dissolve the injunction or upon the merits.

The court dissolved the injunction and dismissed the bill, and complainant appeals from that decree.

BERTRAND F. LICHTENBERGER, CARNES, FAISSLER & COCHRAN, for appellant.

CLIFFE & CLIFFE, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

It is clear that the allegations of the bill were not sufficient. After stating that process was not served upon appellant, it alleged that at the time Boynton began suit against appellant in the action at law, appellant was not indebted to Boynton in any amount, and if appellant had been summoned or otherwise properly notified in said suit, it would have had a meritorious defense to said claim. The statement that appellant had a good defense to the suit at law is not sufficient to authorize an injunction against the collection of the judgment. The bill should have stated the cause of action and also the defense with particularity, so that the court could determine whether that which complainant considered a defense was in fact a defense. The facts should have been stated, and not mere conclusions. Reed v. N. Y. Exchange Bank, 230 Ill. 50. But appellees did not demur to the bill or question its sufficiency, and therefore cannot be heard here to say it was imperfect. Such defects must be raised by demurrer. Story's Equity Pleading, secs. 453, 528; Lowden v. Wilson, 233 Ill. 340.

At the hearing no proof was offered by any one of either the cause of action or the defense. If this was a hearing on the merits, the absence of such proof authorized the decree dismissing the bill. When all that occurred is read as set out in the certificate of evidence, it is left in great doubt what was being heard. It began as a hearing of the motion to dissolve the injunction. Other things said indicated a hearing on the merits. The solicitor for appellees said that the affidavits of Mr. Cohoon and Mr. Olmstead were on file and could be read in evidence; that he had present the original appointment, signed by the president of appellant and by Cohoon, and that he would offer that in evidence, "and that will raise the flat question of law right up to the court." The contract between appellant and Cohoon was then read, and the affidavits of Olmstead and Cohoon, and another copy of the contract was read as a part of Cohoon's affidavit. All this was read in evidence by and on behalf of the appellee, Boynton, the defendant, who alone offered proofs. He began the introduction of proof, a natural proceeding if it was the motion to dissolve which was being heard, but not the course which would naturally have been pursued if this was a final hearing upon the merits, in which case Boynton would have had no occasion to offer any proofs till complainant had made a case. It was then admitted by appellee Boynton, at the request of complainant, that Cohoon did not act as agent in any other way except under the terms of the written agreement. Both sides then rested, the complainant offering no proof, except said admission. All the proof related solely to the question of service. It is not conceivable that if this had been considered a trial of the case on the merits the defendant would have been the one to begin offering proofs, and that no other proof would have been offered, or that if the court had decided that the bill should be dismissed because a meritorious defense had not been shown, appellant would not have asked the court to

re-open the cause and permit it to offer the omitted proof. It appears clear to us from a perusal of the entire certificate of evidence, that the attention of counsel and the court was solely directed to the question whether the service was sufficient, or was such that the equitable remedy sought did not exist. Moreover, the decree first dissolved the injunction, and then recited "as said injunction is the sole and only remedy sought in said bill of complaint" the bill is dismissed for want of equity. We therefore think it proper to first consider the service.

The bill set out and the answer admitted the return upon the summons. The return was sufficient to give jurisdiction of appellant in that action if E. H. Cohoon was, at the date of said service, September 21, 1905, the agent of appellant. This agency was denied in the bill and asserted in the answer. The proof showed that on February 24, 1905, E. H. Cohoon & Company was composed of E. H. Cohoon and John Hadsall. On that date appellant, an Illinois corporation, as the first party, and E. H. Cohoon & Company, as the second party, entered into a written contract, signed by appellant by C. H. Foster, its treasurer, and by E. H. Cohoon & Company, and also by E. H. Cohoon and John Hadsall, individually. The body of the contract began as follows:

"1. That first party hereby appoints second party its exclusive agent for the sale of Cadillac Automobiles, supplied by party of the first part in the following described territory, to-wit: Northern part of De Kalb county, down to and including Milan, Afton and Pierce townships.

2. That it is hereby mutually agreed in respect to said agency as follows: (a) This agency is to exist until terminated as hereinafter mentioned. (b) Second party is not to sell, or solicit for sale, any such automobiles outside of the above described territory. (c) Second party agrees faithfully to represent and advertise such automobiles; to make all reasonable efforts to promote

and increase the sales thereof; to keep in stock at least —— automobiles supplied by first party, for the sole purposes of demonstrating, exhibiting to intending purchasers, and to maintain the same in good order and repair. (d) Second party agrees to establish a repository and repair station for the satisfactory display, care and repair of such automobiles, to respond promptly to all inquiries respecting the purchase of said automobiles; to keep first party fully informed as to the number of inquiries for, and sale of, automobiles, within said territory, and any other matters affecting the interests of first party, in connection with this agency, to sell all vehicles covered by this agreement, and all their parts, attachments, and equipment, at the selling prices, according to lists thereof to be furnished by said first party, to do nothing that will in any way infringe, impeach or lessen the value of any of the patents under which the vehicles furnished by party of the first part are manufactured, and not to sell, or offer for sale, directly or indirectly, any new automobiles, or motor cars, which are regarded by first party as in competition with the vehicles covered by this agreement."

By other provisions of the contract appellant was to sell Cadillac automobiles to the second party at a discount of fifteen per cent., and parts and attachments at a discount of ten per cent., from its price list, for cash f. o. b. cars, Detroit. The contract in terms provided that appellant should sell the machines to Cohoon & Company and that the latter should purchase and pay for them. A part of the contract, marked "additional," gave Cohoon & Company the privilege of working in Ogle county until occupied, and another provided that the contract should expire by limitation on October 1, 1905, and could be canceled before upon thirty days' written notice. There were many other provisions, which have no apparent bearing upon this controversy. The affidavit of Olmstead showed that at the time in question E. H. Cohoon purported to act as the agent of appellant at the village of Genoa, in said

DeKalb county; that he had on hand a supply of pamphlets, circulars and descriptive matter of appellant for general circulation; that appellant had a repository and repair station for the display, care and repair of Cadillac automobiles, in charge of E. H. Cohoon at Genoa; that Cohoon was in the habit of responding to inquiries in regard to the purchase of Cadillac automobiles, in Genoa, and was engaged in the promotion of Cadillac automobiles, and was recognized and purported to act in said village for and on behalf of appellant as its agent in the sale of Cadillac automobiles and in promoting the interests of appellant, and that it was generally understood in that community that said E. H. Cohoon was the agent of appellant, and that he held himself out to the world as the agent of appellant. The affidavit of Cohoon stated that he did act as the agent of appellant under the terms of said written agreement, and that from February 24, 1905, to October 1, 1905, he performed, as agent of appellant, all the duties prescribed by said agreement according to its terms, and acted as agent for appellant in the territory mentioned in said agreement and transacted for it its business in the sale of automobiles, repairs, automobile parts and attachments; that the summons in question was served upon him by the sheriff while he was acting as such agent of appellant; that he soon thereafter sent said summons to appellant as hereafter stated; that, after the service of the summons upon him, he, as agent under said written agreement, transacted its business in the territory mentioned in the agreement in the sale of its automobiles, automobile parts and attachments, and in other matters affecting the interests of appellant in connection with his said agency. Some of these statements in the affidavits were mere conclusions, and therefore not competent, but the affidavits were sufficient to show that Cohoon did all that the contract authorized him to do. Was he an agent of appellant for the purpose of the service of the summons upon appellant?

In Italian-Swiss Agricultural Colony v. Pease, 194 Ill. 98, appellant had been served by delivering a copy of the summons to one Philip L. Raphael, the agent of said colony, the return being similar in language to that here involved. Appellant filed a plea in abatement which alleged that Raphael was not and had not been its agent. It was defeated upon the trial of that plea and appealed from the judgment upon the verdict. The court there modified a certain instruction asked by appellant by adding that if Raphael held himself out as the defendant's agent and defendant knew he so held himself out and if the summons was served by leaving a copy with Raphael then the service was sufficient. It was held that the testimony there recited justified the modification. At the request of appellee the court gave this instruction: "If a corporation knowingly and voluntarily permits a person to hold himself out to the world as its agent, said corporation will be bound as principal to those dealing with such person to act upon the faith that such agency exists; and this is true irrespective of whether or not an agency in fact exists." It was held that this instruction announced a well-settled rule of law applicable to the relation of principal and agent. The court also said: "The appointment of an agent need not be proved by direct testimony that the principal by affirmative words constituted him his or its agent. The appointment may be established by implication of law arising out of the conduct of the parties or by way of estoppel. We see no reason why this implication or estoppel will not arise as well in favor of one who seeks to serve the process of the courts on the agent as in favor of one who seeks to bind the principal by the acts and contracts of the agent."

Board of Trade v. Hammond Elevator Co., 198 U. S. 424, was a case where jurisdiction of the Hammond Elevator Company had been obtained in Illinois by like service upon an alleged agent, and on motion to set

aside the service the service was quashed and, counsel
for plaintiff stating that he could not make any differ-
ent service, the bill was dismissed and the plaintiff
appealed.  In that case there was a written contract
between the Hammond Elevator Company and the
person upon whom service was had as agent in which
it was expressly stated that the relation of principal
and agent did not exist between them.  It was held
that this contract was not decisive of the relations as
to third parties dealing with them upon the basis
of the existence of such relations.  The court quoted
from an earlier decision where the authority of the
person served to receive service of process was de-
nied by the defendants, as follows:  "In such case
it is not material that the officers of the corporation
deny that the agent was expressly given such power, or
assert that it was withheld from him.  The question
turns upon the character of the agent, whether he is
such that the law will imply the power and impute the
authority to him, and if he be that kind of an agent,
the implication will be made, notwithstanding a denial
of authority on the part of the other officers of the cor-
poration.  *  *  *  In the absence of any express au-
thority the question depends upon a review of the sur-
rounding facts and upon the inference that the court
might properly draw from them."  In that case (as
here) the contract made the alleged agent buy and the
Hammond Elevator Company sell the commodities in-
volved.  After considering the evidence, it was said:
"Notwithstanding these protestations and excessive
precautions used to prevent the correspondent being
held as agent, the method of business shows that the
party really interested in the transaction is the de-
fendant, and that the correspondents are compensated
as if they were agents, and not principals."  The court
also said:  "It is evident that if these correspondents
be not regarded as agents in these transactions, it is
possible for the defendant to establish similar corre-

spondents in a dozen cities in at least a dozen states of the Union, and an enormous business be built up, in which the defendant company is the real principal, with no possibility of being sued except in the States of Indiana and Delaware."

If the contract before us merely provided that appellant should sell Cadillac automobiles to Cohoon & Company and that the latter should buy them from appellant, and that Cohoon & Company should have the exclusive right to sell Cadillac automobiles within the territory named and during the period of time covered by the contract, and that Cohoon & Company should sell only at the prices fixed by appellant and should buy the machines at a certain discount from that price, no doubt such contract would not make Cohoon & Company agents for appellant upon whom summons against appellant could be served, but this contract contains far more than that. The contract expressly declares that appellant appoints E. H. Cohoon & Company its exclusive agents for the sale of Cadillac automobiles within certain territory. It thereby put in the hands of Cohoon written authority to hold himself out to the world as agent of appellant. It made it the duty of E. H. Cohoon & Company to faithfully advertise appellant's automobiles, and to make all reasonable efforts to promote and increase the sale thereof. It required said agents to keep appellant fully informed as to the number of inquiries for automobiles and of any other matters affecting the interests of appellant in connection with said agency. It provided that appellant should supply automobiles to Cohoon & Company for the sole purpose of demonstrating and exhibiting them to intending purchasers, and required the agents to keep the same in good order and repair. In many respects, including some not expressed in the foregoing statement, E. H. Cohoon & Company did not, by the contract, occupy the position of persons merely buying merchandise from appellant and becoming the sole and exclusive owners thereof,

but they were required to sell and deal with the property under many restrictions as to the price and control of the goods, and the discount of fifteen per cent. and ten per cent., respectively, was the equivalent of a commission. The only difference between this and the ordinary case of an agency to sell goods for another on commission is that here, instead of the principal retaining the title of the goods and receiving from the agents the remittances, orders and notes for the goods sold, the agents here were invested with the title to the goods ordered and were alone responsible to the principal for the price thereof. We conclude that Cohoon & Company were the agents of appellant and were authorized to represent it and look after its interests within certain parts of DeKalb county at the time this service of summons was had. Moreover, the uncontradicted proof is that, armed with this written contract declaring Cohoon and Hadsall to be the agents of appellant, Cohoon did hold himself out to that community as the agent of appellant and did perform the duties for appellant which the contract required him to do. We are of opinion that the service was good and therefore the bill was properly dismissed.

But again, upon receiving a copy of this summons from the sheriff, Cohoon placed it in the hands of Olmstead, who was going to Chicago, and directed him to take the copy to Chicago and to turn the same over to some of the officers of appellant; and Olmstead, on October 1, 1905, in obedience to said directions from Cohoon, took said copy of the summons to Chicago and delivered the same to Foster, who was then the treasurer of appellant and who swore in his affidavit to the bill of complaint that he was also president of appellant, and Foster then took said copy of the summons and read it and said he understood it, and threw it down upon his desk, and said that that did not amount to anything. This was about four weeks before the return day of the summons. Appellant had full and complete notice of the pendency of the suit and of the

time and place when the summons was returnable, and knew so much of the nature of the action as a summons contains. The treasurer said he understood it and that the suit did not amount to anything. The allegation in appellant's bill that it *now* has no legal remedy was evidently so framed because appellant, at the time just referred to, had a complete legal remedy. If Cohoon was not its agent, upon whom service of process against it could be had, a plea in abatement would have furnished appellant a complete legal defense, and upon the trial thereof the service of the summons must have been quashed. If Cohoon was not its agent then appellant would have run no risk of being subjected to the jurisdiction of the Circuit Court of DeKalb county in that cause. For reasons of its own appellant chose to neglect that plain legal remedy. If Cohoon was not its agent, it of course had a right to stay out of court and take its chances of defeating the levy of an execution by replevin or other remedy at law, but it does not seem to us in accordance with the principles of equity that with all the knowledge which its treasurer possessed long before the return day of the summons, that service was claimed to have been had upon it, it could neglect its perfect legal remedy and then apply to a court of equity for equitable relief by injunction.

The decree is therefore affirmed.

*Affirmed.*